GRIFFIN, J.,
concurring and concurring specially.
For over twenty years, Husband has been employed by the Treasury Department of the United States as a special agent. He has been a federal employee for the entire eighteen years that he and his wife have been married. The petition for dissolution of marriage was filed on June 17, 2010, and, thereafter, the parties engaged in the mandatory disclosure and discovery procedures required by the Family Law Rules of Procedure. Husband also filed two financial affidavits before the parties met for mandatory mediation. In the Mandatory Disclosure and in his affidavits, he identified a Thrift Savings Plan of the Federal Employees Retirement System [“FERS”], as a marital asset and provided documents for his Thrift Savings Plan only. However, in all these disclosures, he never disclosed that, in addition to the Thrift Savings plan, he also has a FERS pension. The value of this pension is unknown because no discovery was allowed on Wife’s fraud claim, but Wife’s counsel asserts that the pension may be worth in the range of half a million dollars. That would make it the largest marital asset.
Mediation was held and the parties reached agreement on all the disclosed assets. However, after the mediation, but before of entry of any order approving the agreement, counsel for Wife informed Wife that she had developed information that Husband had an undisclosed pension having substantial value. New counsel was retained and efforts began to discover if there was, indeed, a pension and its value. However, because of the trial judge’s insistence on using the time that had been set aside for the trial to adjudicate the pension issue, and because he concluded that the Wife should have known about the pension, he ultimately ruled that he would not disturb the mediation agreement. The trial judge should have stuck with his first instinct, which was that if there was a marital asset that had not been distributed, distribution would have to be made.
Because of the lack of discovery, very little is known about this pension. Husband did admit at the hearing that he had the pension and that he did not disclose its existence. He claimed that he did not do so for- two reasons: first, he claimed that the pension had no value until he retired; and, second, he claimed that he was in the process of converting it into a disability pension, in which case it would no longer be a marital asset. He also acknowledged that he failed, as required by the Family Rules, to produce the required documenta *1008 tion relating to this asset. He claimed that he did not produce any documents because he did not have possession of any pension documents, even though it appears to be undisputed that he had ready access to all account information on a FERS website.
Husband’s justification for the failure to disclose the pension is nonsense, and the failure to produce records of it in compliance with mandatory disclosure is a clear violation of the rules. Presumably, a person represented by a lawyer would have discussed such an asset with his counsel, but his counsel at oral argument denied knowing anything about any pension— even though he knew his client was a career federal employee.
In my view, the trial court erred not only in refusing to allow Wife to develop the facts about the pension, but also in focusing on Wife’s knowledge and conduct, rather than Husband’s. If a divorcing spouse is excused from disclosing material assets in their financial affidavits and in his mandatory disclosure form because the other spouse “should have known” about the asset, we have created a nonsensical procedure. The point of mandatory disclosure is to prevent just this type of situation from arising. Each spouse is duty-bound to disclose everything. Here, Husband did not disclose a substantial asset about which he had abundant knowledge and about which he had obviously done some serious thinking. Wife’s knowledge of the pension was inferred by the judge in spite of her ferocious denials because the judge did not believe that she could not have known her husband had both a pension and a Thrift Savings Plan. It is hard to see why Wife “had to know” about the pension if Husband’s own attorney, experienced in this area of the law, never tumbled to its existence. In any event, what Wife “had to know” is mostly beside the point.
Mediation or not, when a spouse fails to disclose a marital asset over which he or she has control and that fact becomes known, the LEAST that should happen is distribution of the asset, including adjusting the overall distribution or re-mediating, if appropriate. After all, the asset does not cease to be marital just because it has not been distributed. The parties’ mediation agreement itself provides that it is based on a warranty by each signatory that the disclosures made are true and accurate and free from any intentional or material omission. So far, just from the record before us, there is no doubt that Husband’s disclosures were false and inaccurate and that there was a material omission. Based on that fact alone, the mediation agreement is voidable at the Wife’s instance. Mediation or not, the asset should be valued, ownership apportioned, distribution made — and sanctions against Husband considered.